UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2023 FEB -6 PM 12: 30

CLERK

BY_____
DEPUTY CLERK

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A WHITE COLORED APPLE iPHONE WITH CRACKS BEARING IMEI 354868096326154 AND A GREY COLORED APPLE iPHONE WITHIN A BLACK COLORED CASE BEARING IMEI 356403877014114, CURRENTLY IN THE CUSTODY OF THE BURLINGTON, VT BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES | Case No. 2:23-mj-18 |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Philip Tremblay, being first duly sworn, hereby depose and state as follows:

INTRODUCTION AND AGENT BACKGROUND

1.  I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property, namely, a white colored Apple iPhone with cracks bearing IMEI 354868096326154 and a grey colored Apple iPhone within a black colored case bearing IMEI 356403877014114, (the SUBJECT DEVICES), which are in the custody of the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) in Burlington Vermont, and are further described in Attachment A, and the extraction from the SUBJECT DEVICES of electronically stored information, further described in Attachment B.

2.  I am a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA). I was deputized as a federal TFO pursuant to 21 U.S.C. § 878 on November 30, 2020, and I am designated by the Attorney General, through approved delegations of authority, to execute and serve search warrants and arrest warrants issued under the authority of the United

1

States. Accordingly, I am serving as a "federal law enforcement officer" as defined in Federal Rule of Criminal Procedure 41(a)(2)(C).

3. Prior to working as a full-time DEA TFO, I was assigned as a Detective at the Burlington, Vermont Police Department (BPD) since June of 2017. I have been a certified full-time law enforcement officer with BPD since May of 2012.

4. Throughout my assignments, I have investigated or assisted with the investigation of numerous illegal drugs, drug related devices/paraphernalia, and drug related evidence. I have seized or participated in seizures of different quantities of illegal drugs, controlled substances, user paraphernalia, and other assorted items, such as money and property related to or acquired through the drug trade. I have seized or participated in seizures of various types of illegal drugs/narcotics during these investigations, to include powder cocaine, cocaine base, marijuana, heroin, fentanyl, methamphetamine, and numerous types of prescription medications. I have conducted or been involved in multiple drug investigations and from this experience, I am familiar with the trends associated with the use and distribution of illegal drugs/controlled substances. I have conducted controlled purchases of illegal substances, both in an undercover capacity and utilizing a confidential source. I have also participated in specialized training in which the primary focus was proactive criminal drug enforcement provided by the Vermont Criminal Justice Training Council. This training taught me interdiction techniques and to identify criminal drug activities. I have successfully attended and completed the 80-hour, U.S. Department of Justice (DOJ) DEA Basic Narcotics School, as well the 32-hour DOJ Federal Bureau of Investigation's (FBI) Law Enforcement Human Intelligence (HUMINT) Training Course, which focused on the development and management of cooperating subjects.

5. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not purport to set forth all of my knowledge of, or investigation into, this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

6. Based on my training and experience and the facts as set forth in this affidavit, I believe that there is probable cause to believe that electronically stored information, further described in Attachment B, is contained within the SUBJECT DEVICES, further described in Attachment A, and that it constitutes evidence and instrumentalities of violations of 21 U.S.C. §§ 841(a)(1), 843, and 846, the distribution of, use of communication facility to facilitate the distribution of, and conspiracy to distribute, controlled substances.

## THE DEVICES TO BE EXAMINED

7. The property to be searched are the SUBJECT DEVICES, two Apple iPhones further described and depicted in Attachment A, which is incorporated herein  The SUBJECT DEVICES were seized during a search incident to arrest of Shannon STUDIVANT-BARNES in the parking lot of the Sonesta Suites located at 35 Hurricane Ln, Williston, VT. The SUBJECT DEVICES were located on the person of STUDIVANT-BARNES and seized on January 18, 2023. The SUBJECT DEVICES are in the custody of the ATF at its Burlington, Vermont secured office.

8. The applied-for warrant would authorize the physical and forensic examination of the SUBJECT DEVICES for the purpose of identifying electronically stored data particularly described in Attachment B, which is incorporated herein.

## PROBABLE CAUSE

9. The United States, including the DEA, is conducting a criminal investigation of a Drug Trafficking Organization ("DTO") regarding possible violations of 21 U.S.C. § 841(a) (distribution of controlled substances) and 21 U.S.C. § 843 (use of a communication facility to facilitate the distribution of controlled substances). The investigation was initiated in October 2021. By December 2022, law enforcement had conducted 17 controlled purchases into the DTO, including five purchases into STUDIVANT-BARNES, also known as "Whitey." Throughout the investigation, law enforcement sources contacted a "customer phone" number in order to arrange controlled purchases.

10. On January 26, 2023, a Grand Jury returned a federal indictment charging multiple members of the DTO, including STUDIVANT-BARNES, with knowingly and willfully conspiring to distribute controlled substances in Vermont between October 2021 and January 2023 under docket number 2:23-cr-4. STUDIVANT-BARNES was also charged in two substantive counts of the indictment with distributions of controlled substances on June 7, 2022 and June 9, 2022.

11. Based on the investigation, law enforcement believes STUDIVANT-BARNES engaged in street level drug transactions and assisted in "training" other members new to the Burlington, VT area on operations of the DTO at the street level. Law enforcement arranged the controlled purchases from the DTO on June 7, 2022 and June 9, 2022 with which STUDIVANT-BARNES was charged by calling the DTO's "customer phone."

12. On January 11, 2023, BPD Detective Vivori was circulating the area of Burlington, VT where the DTO typically conducted their apparent drug transactions daily.

Detective Vivori observed a silver Audi bearing VT temporary registration W133375 occupied by two individuals. Detective Vivori observed STUDIVANT-BARNES to be in the rear passenger seat, and an unknown male in the driver's seat. That male was later identified by Detective Vivori as Shamir ELLIOTT upon his arrest. Further surveillance of the Audi on January 11, 2023, yielded a short duration trip to a residence at 229 Pearl St, Essex Junction, VT, an address of interest related to the DTO's illegal activities (specifically apartment C within the residence).

13. On January 13, 2023, Detective Vivori conducted surveillance in the area of 229 Pearl Street in Essex, VT. At approximately 10:44 a.m., Detective Vivori observed the Audi leave the residence = and go into Burlington, VT. Detective Vivori observed the vehicle as it traveled to the area of Decatur Street and N. Winooski Avenue where it pulled over and a white male approached the vehicle. The white male entered the Audi and exited less than one minute later. The Audi then pulled away from the area traveling north towards Intervale Avenue. I know based on my training and experience that this type of short duration meeting is consistent with drug dealing activity.

14. While conducting surveillance on 229 Pearl St on January 17, 2023, investigators observed three vehicles of interest related to the DTO that had previously been identified. One of the vehicles was a Toyota Camry bearing Florida registration 43D GXR that had been first observed by investigators at 229 Pearl St on January 8, 2023. A query with the Florida Department of Motor Vehicles showed the vehicle registered to Sixt Rent A Car LLC. A representative with Sixt Rent A Car later confirmed that the vehicle was rented by Naseera ASH and that it was rented from January 6, 2023 and due back January 26, 2023. I was familiar with

5

ASH as an individual who had rented prior rental vehicles utilized by the DTO during the investigation.

15. Detective Vivori noted that during his surveillance he observed a male he believed to be Ronald HARRIS arrive in a Honda Accord to 229 Pearl St at approximately 8:14 p.m. The male believed to be HARRIS was observed by Detective Vivori entering apartment C at approximately 8:15 p.m. At approximately 9:29 p.m., Detective Vivori observed a male he believed to be Shannon STUDIVANT-BARNES exit apartment C and get into the driver's seat of the previously noted Camry. Approximately one minute later, two males exited apartment C and got into the previously noted Honda Accord. Both vehicles then left the area of 229 Pearl St and were monitored by investigators. The Camry was observed traveling directly to the Sonesta Suites located at 35 Hurricane Ln, Williston, VT. A male matching STUDIVANT-BARNES' description exited the Camry and went into the hotel. A short time later that male returned to access the Camry and carried a bag back into the hotel. Detective Ellerman spoke with a representative from the Sonesta who confirmed that a guest was registered to Room 113 under the name "Shannon Barnes."

16. Investigators maintained surveillance on Sonesta Suites while other investigators conducted an arrest of HARRIS as he eventually traveled southbound on Route 7 in the previously noted Honda Accord. HARRIS was identified as the operator and sole occupant of the vehicle and arrested just after midnight on January 18, 2023. Approximately $100,000 in U.S. Currency was located within the vehicle.

17. A search warrant for 229 Pearl St, apartment C granted by the Honorable Magistrate Kevin J. Doyle was executed at approximately 12:33 a.m. on January 18, 2023. Law enforcement officers stationed on the perimeter observed multiple grocery style bags get thrown

6

out the window on the southwest corner of the building as the entry team entered the apartment. Three individuals were located coming from the area of the bedroom on the southwest corner. Those individuals were identified as Rasheed STOKES-JOHNSON, Eric WEAVER, and Shamir ELLIOTT. Within the residence, suspected drugs, paraphernalia, and U.S. Currency was located and seized. The grocery style bags that were thrown out the window contained a significant amount of illegal narcotics. Back at the Burlington Police Department, TFO Perry determined that approximately 13,500 bags of a substance a sample of which tested presumptive positive for fentanyl were seized, as well as approximately 1,300 grams of a substance that field tested presumptive positive for cocaine. The suspected cocaine appeared to be cocaine base ("crack" cocaine) based on my training and experience.

18. I spoke with the primary resident of 229 Pearl St, apartment C, James MORGAN, who agreed to speak to me. MORGAN advised that he allowed individuals who he believed to be from Philadelphia, PA to stay at his residence in exchange for money to help with rent and drugs. MORGAN advised that different members of the group stayed at his residence at different times, and that they had their own room which the group kept locked most of the time from the rest of the household. MORGAN identified the room on the southwest corner of the residence. MORGAN did not know government names for any of the individuals associated with the group, but provided nicknames that I was familiar with, including "Whitey" (STUDIVANT-BARNES). MORGAN also identified a Florida registration sedan as a vehicle being utilized by the group recently. MORGAN stated that "Whitey" had been at the apartment earlier in the day, but had left a few hours prior. This was consistent with observations by investigators earlier in the evening while monitoring the Camry to Sonesta Suites.

19. At approximately 8:38 a.m. on January 18, 2023, Detective Vivori observed a male he recognized as STUDIVANT-BARNES exiting the Sonesta Suites. STUDIVANT-BARNES was observed attempting to access the Toyota Camry and was taken into custody. An on-scene search of STUDIVANT-BARNES incident to arrest by BPD Officer Baur yielded two cellular phones (the SUBJECT DEVICES) located in the front pocket of the sweatshirt that STUDIVANT-BARNES was wearing. The SUBJECT DEVICES were seized and transported to the Burlington Police Department where they were secured as evidence (Tag # 79181).

20. STUDIVANT-BARNES provided consent for investigators to search the Camry and his hotel room. No items were seized from either search.

21. Back at the Burlington Police Department, I assisted in a secondary search incident to arrest of STUDIVANT-BARNES as he was temporarily within the secure facility. During the secondary search, I located just under $600 in U.S. Currency and 4 and ½ pink colored pills that were later identified by an online pill identifier as Oxycodone.

22. While still at the Burlington Police Department, STUDIVANT-BARNES waived his Miranda rights and agreed to talk to Detective Vivori and me. In summary, STUDIVANT-BARNES admitted to being involved in some sort of organization that distributed illegal drugs in the Burlington, VT area, although he did not offer many details. STUDIVANT-BARNES described his role within the organization as someone at "the bottom of the totem pole," but indicated that he was making what he considered a decent amount of money. At one point I offered that he went by the nickname "Whitey" and had been recently driving the newest member of the group around Burlington, VT, showing him how to operate. STUDIVANT-BARNES did not dispute this and implied that I had been watching him closely because I had described exactly what was going on. Our conversation was audio recorded.

23. On January 20, 2023, custody of the SUBJECT DEVICES was transferred to ATF Special Agent Wood. The SUBJECT DEVICES are currently secured at the Burlington, VT ATF Office (Exhibits 048 and 049).

## TRAINING AND EXPERIENCE

24. Based on my training and experience, I also know the following:

a. Persons who participate in the distribution of controlled substances frequently use cellular telephones, among other communications devices, to coordinate their unlawful activities and to maintain contact with suppliers and consumers of illegal drugs.

b. Information stored in the memories of these communication devices constitutes evidence of drug trafficking. Among other things, the evidence may contain the telephone numbers assigned to the communication devices, messages received by or sent from the devices, identification numbers and other information contained in their electronic memories, and the records of telephone numbers to which calls were placed and from which calls were received. The device may also contain GPS or similar location information indicating where the devices have traveled.

c. With their cellular phones, drug dealers often take photographs or videos of drugs, drug paraphernalia, guns, other members of their organizations, cash and assets obtained from profits of drug sales, and locations associated with their illegal activity. These photographs or videos may be stored in the memory of those cellular phones.

d. Distributors of controlled substances often carry firearms to protect both their product as well as any profits they may obtain from their distribution activities. I have participated in investigations (related to the distribution of controlled substances) in which evidence of unlawful purchases and possession of firearms have been found in the data stored in

cellular telephones, including photos stored in the cellular telephone memory – some of which have depicted firearms or individuals possessing firearms – text messages or calls to arrange the purchase of a firearm, or contact with a seller of a firearm through an online advertisement. Often, the same cellular telephones contain evidence related to the distribution of controlled substances, including photographs of controlled substances and bulk United States currency.

## INFORMATION REGARDING ELECTRONIC STORAGE AND FORENSIC ANALYSIS

25.  Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

26.  *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Subject Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Subject Devices because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

  c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic device was used, the purpose of its use, who used them, and when.

  d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

  e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

  27. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Subject Devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the devices to human inspection in order to determine whether it is evidence described by the warrant. It may be necessary to conduct the examination with forensic equipment outside the District of Vermont.

  28. *Manner of execution.* Because this warrant seeks only permission to examine device already in law enforcement's possession, the execution of this warrant does not involve

the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

29. I respectfully submit that based on the foregoing, there is probable cause for the issuance of a search warrant authorizing the examination of the SUBJECT DEVICES, further described in Attachment A, to seek the items described in Attachment B.

Respectfully submitted,

_____
Philip Tremblay
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me on February 6, 2023.

_____
HONORABLE KEVIN J. DOYLE
UNITED STATES MAGISTRATE JUDGE